HENRY L. WILLIAMS & another *vs.* GEORGE W. JACKMAN & another.

A person who makes a contract in writing for the building of a ship, to be finished and ready for sea on a day and at a place named in the contract, for a fixed price, part of which he agrees to pay while the work is in progress, in regular weekly payments, without regard to the amount of work accomplished, and the remainder when the ship is ready for sea, acquires no property in the ship before her completion, although an agent employed and paid by him to superintend the construction is, by oral permission of the builders, present every day while the ship is building, making suggestions and giving directions about the work.

ACTION OF TORT for the conversion of an unfinished ship. Answer, property in the defendants as assignees of Currier & Townsend, insolvent debtors. The case was submitted to the judgment of the court, with power to draw such inferences as a jury might, upon an agreed statement of facts, in substance as follows :

On the 14th of March 1856, an agreement in writing was made between the plaintiffs and Currier & Townsend, by which the latter undertook to build, finish and complete, ready for sea, for the plaintiffs, a first-class copper-fastened ship, to be ready for sea, at a wharf in Newburyport, by the 1st of July 1856; the plaintiffs agreed to pay to Currier & Townsend, " from time to time, while said ship is building, the sum of twenty to twenty five thousand dollars, and when the ship is ready for sea, such amount as shall make altogether the sum of fifty eight thousand dollars; " and it was agreed that " no interest is to be charged on the amounts advanced" to Currier & Townsend by the plaintiffs.

On the 22d of March, the plaintiffs further agreed in writing to pay Currier & Townsend, " till the amount of twenty to twenty five thousand dollars is paid as per contract, one thousand dollars every week Saturday."

The making of the first agreement was preceded by verbal negotiations, in the course of which the plaintiffs informed Currier & Townsend that Captain Israel P. Williams would superintend in their behalf the building of the ship, and Cur-

rier & Townsend gave their assent to this arrangement. Captain Williams had previously superintended the building of another ship by Currier & Townsend for the plaintiffs. On the 15th of March, the plaintiffs addressed a note to Currier & Townsend, stating that they had employed Captain Williams to superintend the building of the ship, and requesting that he might be considered their agent in all things pertaining to such superintendence. This note was delivered on the same day by Captain Williams to Currier & Townsend at their place of business. About the same time, Currier & Townsend began to build the ship, and carried on the work till the 9th of the following May. Every day during this time, Captain Williams was at the ship-yard where the ship was building, giving directions, making suggestions, talking with Currier & Townsend about the work, and devoting his whole time to superintending it; and the plaintiffs paid him his expenses, and three dollars a day for his services.

The plaintiffs paid three thousand dollars to Currier & Townsend on the 22d of March, and one thousand dollars on Saturday of every week thereafter, until the work was stopped. This money was paid on one occasion by one of the plaintiffs, and on every other occasion by Captain Williams, who called at the plaintiffs' place of business on Saturday of every week to receive it, and at the same time reported to them the progress made in the work. Currier & Townsend signed receipts for the money as paid on account of a ship building by them for the plaintiffs.

On the 21st of May, Currier & Townsend petitioned for the benefit of the insolvent laws, and, upon due proceedings had, the defendants were chosen their assignees, and the ship came into their possession as such. The defendants, upon notice of the plaintiffs' claim, refused to deliver the ship to them, and finished and sold her for the benefit of all the creditors.

*S. E. Sewall & S. H. Phillips,* for the plaintiffs. It has long been settled law in England and Scotland, and has been generally recognized in this country, that the payment by instalments for a ship built under the superintendence of the

person for whom she is built, makes him the owner of her, from the time of the first payment. *Woods* v. *Russell*, 5 B. & Ald. 942. *Rohde* v. *Thwaites*, 6 B. & C. 392. *Elliott* v. *Pybus*, 10 Bing. 516. *Atkinson* v. *Bell*, 8 B. & C. 282. *Clarke* v. *Spence*, 4 Ad. & El. 448. *Wood* v. *Bell*, 5 El. & Bl. 772, and 6 El. & Bl. 355. *Laidler* v. *Burlinson*, 2 M. & W. 602. *Moody* v. *Browne*, 34 Maine, 107. *Butterworth* v. *McKinly*, 11 Humph. 209. Abbott on Shipping, 4, 5. Maule & Pollock on Shipping, 18, 19. Blackburn on Sales, 160, 161. Long on Sales, (Rand's ed.) 288. Story on Sales, §§ 234, 316. Chit. Con. (5th Amer. ed.) 378. Addison on Con. 223, 1034. 2 Parsons on Con. 30, note. Bell on Sales, 17.

The intention of both parties was to vest in the plaintiffs the title to the ship while building, and between them no delivery or change of possession is necessary. The intention of the vendor to pass, and of the vendee to accept, the title is sufficient. *Lanfear* v. *Sumner*, 17 Mass. 110. *Damon* v. *Osborn*, 1 Pick. 476. *Brown* v. *Bellows*, 4 Pick. 193. *Shumway* v. *Rutter*, 7 Pick. 58. *Ludwig* v. *Fuller*, 17 Maine, 162. The defendants as assignees can have no greater rights than Currier & Townsend had. *Lanfear* v. *Sumner*, 17 Mass. 115. *Lempriere* v. *Pasley*, 2 T. R. 490. *Mitchell* v. *Winslow*, 2 Story R. 637. But if delivery was necessary, the circumstances show a delivery to Captain Williams, as the plaintiffs' agent, and the rest follows by right of accession. *Glover* v. *Austin*, 6 Pick. 209. *Sumner* v. *Hamlet*, 12 Pick. 82.

In *Mucklow* v. *Mangles*, 1 Taunt. 318, there was no superintendence of the building of the vessel, and nothing was done indicating acceptance of the work; and that case was doubted by Park, J. in *Carruthers* v. *Payne*, 5 Bing. 270. In *Merritt* v. *Johnson*, 7 Johns. 473, also, there was no superintendence. The decision in *Andrews* v. *Durant*, 1 Kernan, 35, cannot overbalance the authorities already cited.

The omission, in the original contract, of any provision for superintendence is immaterial, since the superintendent was appointed and engaged in his duties the very day after the date of the contract. *Wood* v. *Bell*, above cited. Nor is the plain-

tiffs' title affected by the fact that the amount of the weekly payments was not made to depend upon the progress of the work. It is obvious that at least one thousand dollars in value of work and materials would be put into the ship each week, and the plaintiffs would not be held to make the weekly payments agreed upon, unless at least equal amounts in labor and materials had been previously put into the ship.

*B. R. Curtis* & *C. T. Russell*, for the defendants, cited also *Baker* v. *Gray*, 17 C. B. 462; *Oldfield* v. *Lowe*, 9 B. & C. 73; *Tripp* v. *Armitage*, 4 M. & W. 687; 1 Parsons Marit. Law, 74; *Decker* v. *Furniss*, 4 Kernan, 611; *Low* v. *Austin*, 20 N. Y. 181; *Brown* v. *Morgan*, 2 Bosw. 485; *Comfort* v. *Kievsted*, 26 Barb. 472; *Johnson* v. *Hunt*, 11 Wend. 135; *Bonsey* v. *Amee*, 8 Pick. 236; *Sumner* v. *Hamlet*, 12 Pick. 82; *Mixer* v. *Howarth*, 21 Pick. 205; *Spencer* v. *Cone*, 1 Met. 283; *Lamb* v. *Crafts*, 12 Met. 356; *Forsyth* v. *Dickson*, 1 Grant, 26; *Clemens* v. *Davis*, 7 Barr, 263; *Pritchett* v. *Jones*, 4 Rawle, 266; U. S. St. 1850, *c.* 27, § 1.

BIGELOW, C. J. Under a contract for supplying labor and materials and making a chattel, no property passes to the vendee till the chattel is completed and delivered, or ready to be delivered. This is the general rule of law. It must prevail in all cases, unless a contrary intent is expressed or clearly implied from the terms of the contract.

In the case at bar, no such intent appears. The contract of the builders was to finish the vessel, and have her ready for sea at a specified place on or before a day certain. The vendees were to pay a fixed sum when the vessel was completed and ready for delivery. They were also to advance certain sums, from time to time, amounting to less than half the stipulated price, in anticipation of the completion of the work, but the sums so to be advanced were not graduated or measured by the amount of work done or of materials furnished or the progress made towards the final fulfilment of the contract. There was no stipulation to pay instalments at certain specified successive stages of the work; it was a mere agreement to make certain payments, by way of advance, which were fixed upon

arbitrarily, without reference to the extent of the labor and materials actually expended and used for the construction of the vessel at the time they were to be made. Nor was there any right reserved to the vendees to control or direct the work, or to exercise any superintendence or control over it, during its progress. It is true that the agent of the vendees was allowed to be present in the ship-yard where the vessel was building, but this was by permission only granted by the builders. It was no part of the original contract, and the builders might, at any time, have revoked this permission, without violating any part of their agreement.

The case at bar is clearly distinguishable from the cases determined by the English courts, which have been cited in the argument. To say the least, some of those decisions rest upon very questionable grounds. They have been carefully reviewed, and the validity of the reasons by which it is attempted to vindicate them has been impugned by approved textwriters, and in judicial decisions by courts in this country. The case of *Andrews* v. *Durant*, 1 Kernan, 35, contains an elaborate discussion of all the decided cases, and an exposition of the application of the rule of law to contracts for the building of ships, adopted in the State of New York, and confirmed by subsequent decisions. *Judgment for the defendants.*